UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JONTELE SWANSON-DEVILL GOODWIN,

     Petitioner,

v.

JEFFREY HOWARD,[1]

     Respondent.

_____/

Case No. 21-cv-10770
HON. MARK A. GOLDSMITH

### OPINION & ORDER (i) DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, (ii) DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND (iii) GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS

Petitioner, Jontele Swanson-Devill Goodwin, filed a pro se application for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. Petitioner challenges his conviction for solicitation to commit murder, Mich. Comp. Laws § 750.157b(2), and witness tampering, Mich. Comp. Laws § 750.122(7)(c). Petitioner was sentenced to thirty-seven to sixty years in prison on the solicitation conviction and nineteen to forty years on the witness tampering conviction as a fourth habitual offender, Mich. Comp. Laws § 769.12. For the reasons that follow, the petition for a writ of habeas corpus is denied.

### I. BACKGROUND

Petitioner was convicted after a jury trial in Michigan's Monroe County Circuit Court. This Court recites verbatim the relevant facts upon which the Michigan Court of Appeals relied,

---

[1] The Court amends the caption in this case to reflect that the proper respondent in this case is now Jeffrey Howard, the warden of the Kinross Correctional Facility, where Petitioner is now incarcerated. The only proper respondent in a habeas case is the habeas petitioner's custodian, which in the case of an incarcerated habeas petitioner would be the warden. See Edwards v. Johns, 450 F. Supp. 2d 755, 757 (E.D. Mich. 2006); see also Rule 2(a), 28 foll. U.S.C. § 2254.

which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). See Wagner v.

Smith, 581 F.3d 410, 413 (6th Cir. 2009):

> The events that gave rise to the charges in this case were preceded by a drug raid on March 16, 2016, at a residence on Sigler Road in Monroe County. Defendant was renting a room at the residence from its owner, Kenneth Rutherford, Sr., whom defendant allegedly supplied with heroin in lieu of paying rent. Rutherford Sr.'s son, Kenneth Rutherford, Jr., and Jessica Cochran also lived in the house. Following the raid, defendant was charged with several firearm and drug-related offenses.
>
> While defendant was awaiting trial in the drug case, he spoke to Kurtis Martell, another jail inmate, who was due to be released. Defendant told Martell that he wanted to kill the three witnesses. Martell cooperated with police authorities and thereafter engaged in further discussions with defendant, which were recorded. During the recorded conversations, defendant expressed that he wanted Martell to kill Cochran and the two Rutherford men by giving them "hot shots" (i.e., poisoned heroin) after he was released. Defendant offered to pay Martell money and other compensation for killing the witnesses.
>
> Before Martell was released from jail, defendant gave him the telephone number of his mother, Lakeisha Goodwin. The police gave Martell a cell phone that could record his telephone contacts with Lakeisha. Martell and Lakeisha had a series of telephone conversations in May and June 2016 in which Lakeisha confirmed defendant's continued intent to proceed with the plan to kill the witnesses. Lakeisha also provided Martell with Tylenol 4 pills that he could sell to raise money to purchase the heroin that he would use to carry out the plan.
>
> Before trial, the trial court denied defendant's motion to dismiss based on entrapment. The court also denied defendant's motion to exclude Lakeisha's recorded statements as inadmissible hearsay. The court concluded that Lakeisha's statements were admissible under MRE 801(d)(2)(E) as nonhearsay statements by a co-conspirator.

People v. Goodwin, No. 338266, 2018 WL 3039711, at *1 (Mich. Ct. App. June 19, 2018).

Petitioner's conviction was affirmed on appeal. Id., lv. den. 927 N.W.2d 223 (Mich. 2019).

Petitioner filed his petition for a writ of habeas corpus, challenging this conviction as well

as a separate conviction for a drug crime and three related offenses involving weapons or

ammunition. This Court severed the drug and weapon offenses conviction from his petition and

the clerk's office opened a second case under case number 21-11724 to permit Petitioner to

challenge those convictions separately. Both cases were held in abeyance so that Petitioner could return to the state courts to exhaust additional claims. Goodwin v. Miniard, No. 21-10770, 2022 WL 298566 (E.D. Mich. Jan. 31, 2022).

Petitioner filed a post-conviction motion for relief from judgment with the trial court, which was denied. People v. Goodwin, No. 16-243088 (Monroe Cty. Cir. Ct., July 13, 2022) (Dkt. 14-22).  The Michigan appellate courts denied Petitioner leave to appeal. People v. Goodwin, No. 363380 (Mich. Ct. App. Mar. 20, 2023); 3/20/23 Op. at PageID.1261; lv. den.  994 N.W.2d 258 (Mich. 2023).

Petitioner filed a second post-conviction motion for relief from judgment, which the trial court denied. People v. Goodwin, No. 16-243088 (Monroe Cty. Cir. Ct., Feb. 22, 2023) (Dkt. 14-23).  The Michigan appellate courts denied Petitioner leave to appeal. People v. Goodwin, No. 365971 (Mich. Ct. App. Aug. 22, 2023); 8/22/23 Op. at PageID.1090 (Dkt. 14-24); lv. den.  4 N.W.3d 459 (Mich. 2024).

This Court has reopened the case and permitted Petitioner to file an amended habeas petition. (Dkt. 9). Petitioner seeks habeas relief on the following grounds: (i) Petitioner's conviction should be vacated because he was entrapped by the police, (ii) statements made by Petitioner's mother to Martell should have been excluded for being hearsay and for being unduly prejudicial, (iii) Petitioner's sentencing guidelines were incorrectly scored, (iv) Petitioner is entitled to a new trial based on newly discovered evidence showing that the prosecutor's office withheld exculpatory impeachment evidence, and (v) trial and appellate counsel were ineffective for failing to investigate Petitioner's actual innocence. [2]

---

[2] Petitioner has subsequently filed an amended habeas petition (Dkt. 11), but has not specifically moved to amend the petition. In this amended petition, he claims to have an affidavit from a fellow inmate named David Nelson Richter, whom Petitioner claims is Martell's best friend. Petitioner

## II.  ANALYSIS

### A.  Legal Standard

Title 28 of the United States Code Section 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405–406 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." Id. at 409.  A federal habeas court may not "issue the writ

---

alleges that Richter told him that Martell admitted to fabricating testimony against Petitioner and his mother at trial. Petitioner, however, has not provided this Court with Richter's affidavit. Petitioner also does not seek to add an actual innocence claim based on Richter's affidavit, acknowledging that freestanding actual innocence claims are non-cognizable on habeas review. Amd. Pet. at PageID. 177.  Petitioner, instead, seeks "permission to accompany his claim of innocence with the exhausted constitutional errors that occurred at his trial." Id.  To the extent Petitioner merely seeks to buttress the arguments raised in the amended petition that he filed in Dkt. 8, this Court will permit him to do so.

simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 410–411. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011). To obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of the claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 103.

### B. Statute of Limitations

As part of the answer, respondent argues that the case should be dismissed on the ground that the petition was not timely filed. Answer at PageID.222–239 (Dkt. 13). Petitioner acknowledges that his petition is untimely but argues that the limitations period should be equitably tolled because the various restrictions imposed by the prison system to prevent the spread of COVID-19 prevented him from being able to timely file his habeas petition. Pet. at PageID.13, 29–30, Reply at PageID.1525-1526 (Dkt. 15).

In the statute of limitations context, "dismissal is appropriate only if a complaint clearly shows the claim is out of time." Harris v. New York, 186 F.3d 243, 250 (2nd Cir.1999); see also Cooey v. Strickland, 479 F.3d 412, 415-16 (6th Cir. 2007).

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104–132, 110 Stat. 1214 (AEDPA) applies to all habeas petitions filed after the Act's effective date, April 24, 1996, and imposes a one-year limitations period for habeas petitions. 28 U.S.C. § 2244(d)(1). Petitioner's habeas petition was filed after April 24, 1996, and thus, the provisions of the AEDPA,

5

including the limitations period for filing a habeas petition, apply. See Lindh v. Murphy, 521 U.S. 320, 337 (1997).

Title 28 of the United States Code, sections 2244(d)(1)(A) through (D) states:

(1) A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of—

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed if the applicant was prevented from filing by such State action;
(C) the date on which the constitutional right asserted was originally recognized by the Supreme Court if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

The AEDPA's statute of limitations, however, "is subject to equitable tolling in appropriate cases." Holland v. Florida, 560 U.S. 631, 645 (2010).  A habeas petitioner is entitled to equitable tolling "only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way" and prevented the timely filing of the habeas petition. Id. at 649 (punctuation modified).  The Sixth Circuit has observed that "the doctrine of equitable tolling is used sparingly by federal courts." See Robertson v. Simpson, 624 F.3d 781, 784 (6th Cir. 2010).  The burden is on a habeas petitioner to show that he is entitled to equitable tolling of the one-year limitations period. Id.

Petitioner claims that the various restrictions imposed by the Michigan Department of Corrections to prevent the spread of COVID-19 in the prison system led to the closure of the prison law library, various lockdowns, and the temporary suspension of in-person attorney visits, which Petitioner alleges prevented him from timely filing his habeas petition.

6

The restrictions placed on prisoners like Petitioner by the Coronavirus could possibly entitle him to equitable tolling for the time that it took him to file his petition. See Brown v. Davis, 482 F. Supp. 3d 1049, 1058–1059 (E.D. Cal. 2020) (extraordinary circumstances caused by COVID-19 pandemic rendered habeas petitioner unable to file timely habeas petition, and thus District Court would prospectively equitably toll limitations deadline for filing petition by four months; pandemic impeded record assembly and review, lay and expert discovery, investigation and development, and preparation of complete federal habeas petition, alleged deficient conduct by trial and appellate counsel in state court proceedings exacerbated COVID-19 impacts on work to be done on behalf of petitioner in federal habeas proceeding, and issues and claims in federal habeas proceeding were legally and factually complex). On the other hand, Respondent argues that Petitioner is not entitled to equitable tolling due to the COVID-19 restrictions because he failed to show due diligence in filing his habeas petition in the months before the COVID-19 restrictions were put into place.  Respondent also argues that Petitioner failed to offer specific details as to why the various COVID-19 restrictions impeded his ability to file his petition on time. It is true that "the COVID-19 pandemic does not automatically warrant equitable tolling for a petitioner who seeks it on that basis. The petitioner must establish that he was pursuing his rights diligently and that the COVID-19 pandemic specifically prevented him from filing his motion." United States v. West, 578 F. Supp. 3d 962, 967 (N.D. Ohio 2022) (punctuation modified) (emphasis in original).

Because the statute of limitations does not constitute a jurisdictional bar to habeas review, a federal court, can, in the interest of judicial economy, proceed to the merits of a habeas petition. See Smith v. State of Ohio Dept. of Rehabilitation, 463 F.3d 426, 429, n. 2 (6th Cir. 2006).  Simply put, this Court need not resolve the dispute over the timeliness of the petition.  Assuming without

deciding that the petition was timely, Petitioner's habeas application fails on the merits. See Ahart v. Bradshaw, 122 F. App'x 188, 192 (6th Cir. 2005).

### A.  Entrapment Claim

Petitioner first argues that his conviction should be vacated because the police entrapped him into committing this offense.  Petitioner is not entitled to relief on his claim for several reasons.

First, it is well-established that entrapment is not a constitutional defense. See United States v. Russell, 411 U.S. 423, 430 (1973).  Because entrapment is not a constitutional defense, it cannot form the basis for habeas relief Sosa v. Jones, 389 F.3d 644, 647–648 (6th Cir. 2004). Accordingly, Petitioner's claim that the state court's denial of his entrapment defense was clearly erroneous under Michigan law is not cognizable in a federal habeas corpus petition. Seeger v. Straub, 9 F.Supp.2d 385, 390–391 (E.D. Mich. 1998).

Second, Petitioner's allegations do not make out a claim of entrapment. Entrapment occurs when "the result of the governmental activity is to implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission . . . ." Hampton v. United States, 425 U.S. 484, 490 (1976) (punctuation modified).  Michigan has adopted the objective theory of entrapment. See People v. Juillet, 475 N.W.2d 786, 792–793 (Mich. 1991).  Under an objective theory of entrapment, "[e]ntrapment occurs when the government induces or instigates the commission of a crime by one not ready and willing to commit it, rather than merely providing the opportunity to commit a crime." See Sosa, 389 F.3d at 647.  In Michigan, the defense of entrapment is decided by the judge, not the jury. See People v. D'Angelo, 257 N.W.2d 655, 658–60 (Mich. 1977).

The Michigan Court of Appeals rejected Petitioner's entrapment claim, indicating that "the idea of murdering the suspected witnesses originated with and was directed by defendant," and cited Petitioner's initiation of the contact with Martell, Petitioner's "conversation with Martell in which defendant actively planned how Martell would kill the targeted victims," and that "it was defendant who provided Martell with Lakeisha [Goodwin]'s telephone number as a contact person." Goodwin, 2018 WL 3039711, at *2–3.  Petitioner's predisposition to murder the witnesses, combined with the fact that he initiated the contact with Martell, defeats any colorable entrapment claim. "It is only when the Government's deception actually implants the criminal design in the mind of the defendant that the defense of entrapment comes into play." Russell, 411 U.S. at 436.  Petitioner is not entitled to habeas relief on his first claim.

**B.  Evidentiary Error Claim**

Petitioner next claims that the trial court erroneously admitted Lakeisha Goodwin's statements, which he argues were inadmissible hearsay that did not qualify for admission under the co-conspirator exception to the hearsay rule.  He also claims that her statements were irrelevant and unduly prejudicial.

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." Estelle v. McGuire, 502 U.S. 62, 67–68 (1991).  A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. Id.  Thus, errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. Seymour v. Walker, 224 F.3d 542, 552 (6th Cir. 2000).

Petitioner's primary argument is that his mother's out-of-court statements should not have been admitted because this was inadmissible hearsay evidence that did not qualify under the co-

9

conspirator exception to the hearsay rule. The admissibility of evidence under Michigan's hearsay rules is not cognizable in a habeas corpus proceeding. See Byrd v. Tessmer, 82 F. App'x 147, 150 (6th Cir. 2003).  Petitioner's claim that the trial court violated his right to a fair trial when it admitted his mother's statements into evidence under the co-conspirator exception to the hearsay rule found in Mich. R. Evid. 801(d)(2)(E) raises only an error of state law that is non-cognizable in federal habeas review. See David v. Lavinge, 190 F. Supp. 2d 974, 981–982 (E.D. Mich. 2002). Petitioner's claim is based solely on Mich. R. Evid. 801(d)(2)(E) and does not involve an allegation that this error violated his rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution.  Because Petitioner raises only a state law issue, this Court declines to question the state court's decision to admit his mother's statements into evidence under the co-conspirator exception to Michigan's hearsay rule. Id.

Petitioner also argues that his mother's statements should not have been admitted into evidence because they were unduly prejudicial.

Petitioner's claim that he was denied a fair trial by the admission of irrelevant and highly prejudicial evidence cannot form the basis for habeas relief, because it involves a state law evidentiary issue. See Hall v. Vasbinder, 551 F. Supp. 2d 652, 676 (E.D. Mich. 2008); rev'd on other grds 563 F.3d 222 (6th Cir. 2009).

Moreover, appraisals of the probative and prejudicial value of evidence are entrusted to the sound discretion of a state trial court judge, and a federal court considering a habeas petition must not disturb that appraisal absent an error of constitutional dimensions. See Dell v. Straub, 194 F. Supp. 2d 629, 645 (E.D. Mich. 2002).  So long as a state court's determination that evidence is more probative than prejudicial is reasonable, a federal court on habeas review will not overturn a state court conviction. See Clark v. O'Dea, 257 F.3d 498, 503 (6th Cir. 2001).

The Michigan Court of Appeals found that Lakeisha Goodwin's statements were not unduly prejudicial as follows:

> Lakeisha's statements to the effect that she would help Martell fulfill the solicitation were not unduly prejudicial in view of evidence that defendant planned and solicited the murders. Moreover, Martell gave Lakeisha opportunities to abort the scheme by stating that he would not commit the murders if defendant no longer wanted them. Lakeisha's response that defendant was in good spirits because he expected the charges to be dismissed was probative of defendant's earnestness in planning the homicides. The trial court's decision to admit the evidence was within the range of reasonable outcomes.

Goodwin, 2018 WL 3039711, at *5.

The Michigan Court of Appeals' determination that Lakeisha Goodwin's statements were more probative than prejudicial was reasonable, thus, Petitioner would not be entitled to habeas relief on his claim. Clark, 257 F.3d at 503.  Petitioner is not entitled to relief on his second claim.

**C. Sentencing Guidelines Claim**

Petitioner next argues that Offense Variable 9 of the Michigan Sentencing Guidelines was incorrectly scored.

Petitioner's claim that the state trial court incorrectly scored his guidelines range under the Michigan Sentencing Guidelines is not a cognizable claim for federal habeas review, because it is basically a state law claim. See Tironi v. Birkett, 252 F. App'x 724, 725 (6th Cir. 2007).  Errors in the application of state sentencing guidelines cannot independently support habeas relief. See Kissner v. Palmer, 826 F. 3d 898, 904 (6th Cir. 2016).  Petitioner had "no state-created interest in having the Michigan Sentencing Guidelines applied rigidly in determining his sentence." See Mitchell v. Vasbinder, 644 F. Supp. 2d 846, 867 (E.D. Mich. 2009).  "[I]n short, Petitioner had no federal constitutional right to be sentenced within Michigan's guideline minimum sentence

11

recommendations." <u>Doyle v. Scutt</u>, 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004).  Any error by the

trial court in calculating Petitioner's guideline score would not merit habeas relief. <u>Id</u>.

### D. <u>Brady v. Maryland</u>/Ineffective Assistance Claims

The Court discusses Petitioner's fourth and fifth claims—relating to <u>Brady v. Maryland</u>,

373 U.S. 83 (1963) and ineffective assistance—together because they are interrelated.[3]

In his fourth claim, Petitioner argues that the state withheld exculpatory impeachment

evidence concerning Martell's prior conviction for the theft of pre-recorded funds that Martell had

stolen while working as an informant. The trial court rejected the claim at length in denying

Petitioner's post-conviction motion as follows:

> The "newly discovered" evidence is a prior misdemeanor for Larceny by
> Conversion less than $200.00 that took place in 2005, eleven years prior to the trial
> for this case. This conviction is not newly discovered, only its materiality. At trial
> the prosecution elicited testimony from Kurtis Martell during direct examination
> regarding five of his previous and pending convictions. The convictions elicited
> were; illegal use of a financial transaction device, first degree home invasion,
> unlawful use of a credit card, using or having a false prescription, larceny in a
> building and unlawfully driving away an automobile. After hearing cumulative
> testimony regarding the informant's prior criminal history involving serious
> felonies, the addition of a larceny misdemeanor eleven years prior would not have
> swayed the jury to deliver a different verdict.
>
> Defendant alleges that had he known of the conviction he could have used it to
> impeach the informant. Michigan Rules of Evidence 609 mandates that in order to
> impeach a witness with a prior theft conviction, the crime must be "punishable by
> imprisonment in excess of one year." Defendant (sic) was sentenced on August 25,
> 2005 to 93 days in jail with credit for 62 days served. Further, MRE 609(c) states

---

[3] Respondent contends that Petitioner's fourth and fifth claims are procedurally defaulted, because he failed to present these claims at all levels of post-conviction review in the state trial and appellate courts and no longer has an available remedy with which to properly exhaust these claims. It is unnecessary to address the procedural default issue because the claims are without merit.  <u>See</u> <u>Post v. Bradshaw</u>, 621 F.3d 406, 426 (6th Cir. 2010) ("We need not address the procedural default issue, however, as the claim fails even under de novo review"); <u>Brown v. McKee</u>, 231 F. App'x 469, 477 (6th Cir. 2007) ("Like the district court, however, we need not consider the question of procedural default because the claim can be dismissed as meritless.").

that "evidence of a conviction under this rule is not admissible if a period of more than 10 years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date." This conviction could not have been used to impeach the informant because more than 10 years had elapsed since the date of the conviction and his sentence was less than one year in jail.

People v. Goodwin, No. 16-243088, *5–6 (Monroe Cty. Cir. Ct., July 13, 2022); 7/13/22

Op. at PageID.1083–1084 (Dkt. 14-22).

It is true that suppression of evidence by the prosecution of evidence favorable to the defendant upon request violates due process, where the evidence is material to either guilt or punishment of the defendant, irrespective of the good or bad faith of the prosecution. Brady, 373 U.S. at 87. Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." United States v. Bagley, 473 U.S. 667, 683 (1985). There are three components of a true Brady violation: (i) the evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; (ii) the evidence must have been suppressed by the state, either willfully or inadvertently; and (iii) prejudice must have ensued. Strickler v. Greene, 527 U.S. 263, 281–282 (1999). "Prejudice (or materiality) in the Brady context is a difficult test to meet." Jamison v. Collins, 291 F.3d 380, 388 (6th Cir. 2002).

The court evaluating Goodwin's post-conviction review did not unreasonably conclude that Martell's prior misdemeanor conviction was not material under Brady in that it was inadmissible under Mich. R. Evid. 609 because it was more than ten years old. See United States v. Morales, 680 F. App'x 548, 552 (9th Cir. 2017) (district court did not abuse its discretion in determining that testifying police officer's prior felony drug conviction, which was not disclosed to defendant, was not material, as element for Brady due process violation; the prior conviction

13

would have been inadmissible for impeachment purposes because it had been expunged under California law, it was more than ten years old, and the officer's crime did not involve dishonesty or false statements).

The prosecutor's alleged failure to provide Petitioner with Martell's prior misdemeanor conviction also did not prejudice Petitioner under Brady because it was cumulative of the other evidence that had been introduced at trial to impeach Martell's credibility. See Brooks v. Tennessee, 626 F.3d 878, 892–894 (6th Cir. 2010).  The alleged failure to disclose Martell's misdemeanor conviction to Petitioner was not material within the meaning of Brady in that it was cumulative of Martell's prior convictions which had been introduced into evidence. See United States v. Rosse, 716 F. App'x 453, 466 (6th Cir. 2017).  "At bottom, there is no way that evidence of one more conviction, of the same type that [Martell] had already admitted to and had been cross-examined about, would have made any difference if introduced at [Petitioner's trial]. Id.

Petitioner in his fifth claim alleges that trial counsel was ineffective for failing to discover Martell's prior misdemeanor conviction to use to impeach Martell's credibility and that appellate counsel was ineffective for failing to raise the Brady claim on his appeal of right.

To establish ineffective assistance of counsel under federal constitutional standards, a defendant must satisfy a two-part test. Strickland v. Washington, 466 U.S. 668, 687 (1984).  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. Id.  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. Id. at 689. In other words, a defendant must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. Id.  Second, the defendant must show that such performance

14

prejudiced his defense. Id. at 687. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id., at 694. The Strickland standard also applies to claims of ineffective assistance of appellate counsel. See Whiting v. Burt, 395 F.3d 602, 617 (6th Cir. 2005).

Martell's 2005 misdemeanor conviction was older than ten years old and was inadmissible for impeachment purposes pursuant to Mich. R. Evid. 609(c). Trial counsel, therefore, was not ineffective for failing to impeach Martell with this conviction. See, e.g., Pillette v. Berghuis, 408 F. App'x. 873, 890–891 (6th Cir. 2010).

Moreover, this Court has already concluded, in rejecting Petitioner's Brady claim, that he was not prejudiced by the prosecutor's alleged failure to disclose this misdemeanor conviction because it was cumulative of Martell's prior felony convictions which had already been introduced into evidence. The Sixth Circuit has observed that "it is well settled that 'the test for prejudice under Brady and Strickland is the same.'" Montgomery v. Bobby, 654 F.3d 668, 680, n. 4 (6th Cir. 2011). Because this prior misdemeanor conviction was merely cumulative of other impeachment evidence introduced against Martell, Petitioner was not prejudiced by trial counsel's failure to impeach Martell with this conviction.

The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel on the first appeal by right. Evitts v. Lucey, 469 U.S. 387, 396–397 (1985). However, court appointed counsel does not have a constitutional duty to raise every nonfrivolous issue requested by a defendant. Jones v. Barnes, 463 U.S. 745, 751 (1983). Petitioner's Brady claim is without merit. Accordingly, appellate counsel was not ineffective in failing to raise this claim on Petitioner's appeal of right. Wilson v. Mitchell, 498 F.3d 491, 514–515 (6th Cir. 2007). Petitioner is not entitled to relief on his fifth claim.

### F.  Certificate of Appealability

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b).  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. See Slack v. McDaniel, 529 U.S. 473, 484-485 (2000).

Having considered the matter, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right with respect to any of his claims. Accordingly, a certificate of appealability is not warranted in this case.

### G.  Leave to Proceed In Forma Pauperis on Appeal

Although this Court denies a certificate of appealability to Petitioner, the standard for granting an application for leave to proceed in forma pauperis (IFP) is a lower standard than the standard for certificates of appealability. Foster v. Ludwick, 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002). While a certificate of appealability may be granted only if a habeas petitioner makes a substantial showing of the denial of a constitutional right, a court may grant IFP status if it finds that an appeal is being taken in good faith. Id. at 764–765; 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24 (a).  "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. Foster, 208 F. Supp. 2d at 765.  Although jurists of reason would not debate this Court's resolution of Petitioner's claims, the issues are not

16

frivolous; therefore, an appeal could be taken in good faith and Petitioner may proceed IFP on appeal.

## V.  CONCLUSION

For the reasons set forth above, the Court denies and dismisses with prejudice the petition for a writ of habeas corpus, declines to issue a certificate of appealability, and grants Petitioner leave to proceed IFP on appeal.

**SO ORDERED.**

Dated: May 29, 2026                                    s/Mark A. Goldsmith
Detroit, Michigan                                      MARK A. GOLDSMITH
                                                       United States District Judge


## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 29, 2026.

                                                       s/Joseph Heacox
                                                       JOSEPH HEACOX
                                                       Case Manager